```
1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
2

3       UNITED STATES OF AMERICA,           )
                                            )
4                   Plaintiff               )
                                            )
5           -VS-                            )   Criminal No. 23-10342-PBS
                                            )   Pages 1 - 26
6       STEVE WAITHE,                       )
                                            )
7                   Defendant               )

8                            RULE 11 HEARING

9

10            BEFORE THE HONORABLE PATTI B. SARIS
                  UNITED STATES DISTRICT JUDGE
11

12
        A P P E A R A N C E S:
13
            ADAM W. DEITCH, ESQ., Assistant United States Attorney,
14      Office of the United States Attorney, 1 Courthouse Way,
        Room 9200, Boston, Massachusetts, 02210, for the Plaintiff.
15
            JANE F. PEACHY, ESQ., Federal Public Defender Office,
16      51 Sleeper Street, 5th Floor, Boston, Massachusetts, 02210, for
        the Defendant.
17
                                    United States District Court
18                                  1 Courthouse Way, Courtroom 19
                                    Boston, Massachusetts  02210
19                                  November 21, 2023, 9:49 p.m.

20

21

22

23                      LEE A. MARZILLI
                      OFFICIAL COURT REPORTER
24                  United States District Court
                    1 Courthouse Way, Room 7200
25                      Boston, MA  02210
                        leemarz@aol.com
```

<u>P R O C E E D I N G S</u>

1

2          THE CLERK:  The Court calls Criminal Action 21-10342,

3    United States v. Steve Waithe.  Could counsel please identify

4    themselves.

5          MR. DEITCH:  Adam Deitch on behalf of the United

6    States.  Good morning, your Honor.

7          MS. PEACHY:  Good morning.  Jane Peachy for Steve

8    Waithe.

9          THE COURT:  Thank you.  You all may be seated.

09:50 10          Ms. Peachy, why are we here?

11          MS. PEACHY:  Your Honor, Mr. Waithe wishes to change

12   his plea to all counts in the indictment.  We do not have a

13   plea agreement.

14          THE COURT:  Thank you.

15          Do you all know that I believe Mr. Waithe's father is

16   on Zoom as well as several of the victims?  Is that right?

17          MR. DEITCH:  I believe just a few, yes, your Honor.

18          THE COURT:  And they were all notified under the

19   Victims Act?

09:50 20          MR. DEITCH:  They were.

21          THE COURT:  Okay, Maryellen.

22          THE CLERK:  Sir, could you please stand and then raise

23   your right hand.

24          (Defendant duly sworn.)

25          THE CLERK:  As to Counts 1 through 12, wire fraud, all

1    in violation of Title 18, U.S.C., Section 1343, Count 13,

2    cyberstalking, all in violation of Title 18, U.S.C.,

3    Section 2261(a)(2)(B), and Count 14, conspiracy to commit

4    computer fraud, all in violation of Title 18, U.S.C.,

5    Section 371, and Count 15, computer fraud, aiding and abetting,

6    all in violation of Title 18, U.S.C., Section 1030(a)(4) and

7    (2), do you now wish to change your plea?

8         THE DEFENDANT:  Yes.

9         THE COURT:  And how do you plead to Counts 1 through

09:51 10   12, Count 13, Count 14, and Count 15, guilty or not guilty?

11        THE DEFENDANT:  Guilty.

12        THE COURT:  Thank you.  You may take the stand.

13        THE CLERK:  And then, in order for people to hear us,

14   they said you need to speak into the mics because they can't

15   hear us on the other end.

16        (Defendant takes the witness stand.)

17        THE COURT:  Good morning.

18        THE DEFENDANT:  Good morning.

19        THE COURT:  Now, I want to make sure that that mic is

09:52 20   on and that people can hear.

21        THE CLERK:  You can pull it in.  Also it moves, the

22   mic.

23        THE COURT:  Sir, do you understand that you are now

24   under oath, and if you answer any of my questions falsely, your

25   answers can later be used against you in a prosecution for

1   perjury or making a false statement?

2           THE DEFENDANT:  I do, your Honor.

3           THE COURT:  What is your full name?

4           THE DEFENDANT:  Steve Leon Waithe, Junior.

5           THE COURT:  Do you go by any nicknames?

6           THE DEFENDANT:  No, your Honor.

7           THE COURT:  Do you have any false names that you use

8   on the Internet or social media or anywhere?

9           THE DEFENDANT:  I have my username.

09:53 10        THE COURT:  What is that?

11          THE DEFENDANT:  Mister Hop Skip Jump was my Instagram

12  name.

13          THE COURT:  Where were you born?

14          THE DEFENDANT:  Baltimore, Maryland, in GBMC Hospital.

15          THE COURT:  All right, so Long Island.  You're a New

16  Yorker?  No.  What did you say?

17          THE DEFENDANT:  Baltimore, Maryland.

18          THE COURT:  Oh, Baltimore.  All right, I didn't

19  understand.  Baltimore.  How old are you.

09:53 20        THE DEFENDANT:  I'm thirty years old.

21          THE COURT:  How far did you go in school?

22          THE DEFENDANT:  A bachelor's degree.

23          THE COURT:  From where?

24          THE DEFENDANT:  Penn State University.

25          THE COURT:  So I'm assuming you can read and write,

1    right?

2              THE DEFENDANT:  Yes.

3              THE COURT:  So you read the indictment?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  And do you understand you're pleading

6    guilty without a plea agreement?

7              THE DEFENDANT:  I do, your Honor.

8              THE COURT:  Do you have any mental health issues?

9              THE DEFENDANT:  No, your Honor.

09:53 10         THE COURT:  Do you have any physical issues?

11             THE DEFENDANT:  No, your Honor.

12             THE COURT:  I know you're incarcerated right now, but

13   I'm going to ask anyway:  Have you taken any unlawful drugs

14   within the last 48 hours?

15             THE DEFENDANT:  No, your Honor.

16             THE COURT:  Are there any prescriptions that you

17   should be on that you're not taking?

18             THE DEFENDANT:  No, your Honor.

19             THE COURT:  So how do you feel today?

09:54 20         THE DEFENDANT:  I feel great.

21             THE COURT:  Have you been satisfied with the

22   representation of your attorney?

23             THE DEFENDANT:  I have, your Honor.

24             THE COURT:  Do you feel as if she's answered all your

25   questions?

```
 1              THE DEFENDANT:  Yes, your Honor.
 2              THE COURT:  Do you feel as if she's pressuring you
 3    into pleading guilty?
 4              THE DEFENDANT:  No, your Honor.
 5              THE COURT:  Did anyone make you any promises other
 6    than -- well, did anyone make you any promises?
 7              THE DEFENDANT:  No, your Honor.
 8              THE COURT:  Is there anything that was agreed upon by
 9    counsel one way or another?
09:54 10         MS. PEACHY:  No, your Honor, no agreement.
11              THE COURT:  Not even a plea agreement, anything that's
12    been agreed upon?
13              MS. PEACHY:  No.
14              MR. DEITCH:  No, your Honor.
15              THE COURT:  Has anyone threatened you in any way to
16    get you to plead guilty?
17              THE DEFENDANT:  No, your Honor.
18              THE COURT:  I want to ask the government, what are the
19    penalties that can be imposed?  Thank you.
09:54 20         MR. DEITCH:  Of course, your Honor.  For wire fraud in
21    Counts 1 through 12, the maximum possible penalty is 20 years
22    of incarceration, a fine of up to $250,000, three years of
23    supervised release, and a $100 special assessment.  For
24    cyberstalking, the maximum possible penalty is five years
25    incarceration, a fine of up to $250,000, three years of
```

supervised release, and a $100 special assessment.  For

computer fraud and conspiracy to commit computer fraud, the

maximum possible penalty is five years of incarceration, a fine

of up to $250,000, three years of supervised release, and a

$100 special assessment.  That special assessment is per count.

THE COURT:  Before you sit down, what is the

Sentencing Guideline range tentatively?

MR. DEITCH:  Sure, your Honor.  I think there is a

dispute between the parties in the calculation, but the

government's back-of-the-envelope calculation is 37 to 46

months.

THE COURT:  And what's your back-of-the-envelope?

MS. PEACHY:  27 to 33 months.

THE COURT:  Is he Category 1?

MS. PEACHY:  Yes, no record.

THE COURT:  Do you understand that there is a debate

about the Sentencing Guidelines that you just heard?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And the Probation Department will take a

look at the offense conduct and will give me a presentence

report.  Do you understand that?

THE DEFENDANT:  Yes, I do, your Honor.

THE COURT:  And in that report will be a proposed

Sentencing Guideline range.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  We will then have a sentencing hearing,

2    and I will as a matter of law make that calculation.  Do you

3    understand?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  And then what will happen is, your

6    attorney can ask for a variance and the government can ask for

7    a variance.  Do you understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  The request can be up or the request can

09:56 10   be down.  Do you understand that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  I do believe that -- I don't know if any

13   of them will choose to do that, but the victims will have a

14   right to make a statement, and you'll have a right to make a

15   statement.  Do you understand that?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  And then when I impose a sentence, you

18   will have the right to appeal that sentence.  Do you understand

19   that?

09:56 20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  But you can't at that point withdraw your

22   guilty plea.  Do you understand?

23         THE DEFENDANT:  Yes.

24         THE COURT:  I want to go through the important impacts

25   that a felony conviction can have on you.  First of all, it

1   will deprive you of the right to vote, to serve on juries, to

2   hold public office, but also there are lots of hidden dangers.

3   It could affect, I don't know, it's changing, but the right to

4   get certain student loans, the right to get subsidized housing,

5   certain licensings.  Do you understand it can affect you that

6   way as well?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And similarly I want to go through all the

9   rights you're giving up by pleading guilty, and let me start

09:57 10   with the most basic one.  Do you understand you have a right to

11   a jury trial?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Do you understand a jury would have to

14   unanimously agree that you're guilty beyond a reasonable doubt

15   before you can be convicted?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Do you understand that it has to be twelve

18   out of twelve jurors before you can be convicted?

19          THE DEFENDANT:  Yes, your Honor.

09:57 20          THE COURT:  Do you understand that the government

21   bears the burden of proof beyond a reasonable doubt and it

22   never shifts to you?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you understand the burden of proof

25   beyond a reasonable doubt is really high?

| | |
|---|---|
| 1 | THE DEFENDANT:  Yes, your Honor. |
| 2 | THE COURT:  And do you understand that you're giving |
| 3 | up the presumption of innocence? |
| 4 | THE DEFENDANT:  Yes, your Honor. |
| 5 | THE COURT:  Do you understand that if you were to go |
| 6 | to trial, I would appoint counsel for you like the excellent |
| 7 | lawyer that you have?  Do you understand that? |
| 8 | THE DEFENDANT:  Yes, your Honor. |
| 9 | THE COURT:  And you wouldn't have to pay for a lawyer |
| 09:58 10 | at all? |
| 11 | THE DEFENDANT:  Yes, your Honor. |
| 12 | THE COURT:  And do you understand that you could |
| 13 | subpoena witnesses on your own behalf and have your attorney |
| 14 | cross-examine the government witnesses?  Do you understand |
| 15 | that? |
| 16 | THE DEFENDANT:  Yes, your Honor. |
| 17 | THE COURT:  Do you understand that you wouldn't have |
| 18 | to testify against yourself at trial? |
| 19 | THE DEFENDANT:  Yes, your Honor. |
| 09:58 20 | THE COURT:  On the other hand, you could testify on |
| 21 | your own behalf if you chose to do that.  Do you understand |
| 22 | that? |
| 23 | THE DEFENDANT:  Yes, your Honor. |
| 24 | THE COURT:  And understanding all these very important |
| 25 | rights -- and I always like to stress that right to a jury |

1    trial because it's sort of hard to get twelve people to agree

2    to proof beyond a reasonable doubt -- do you understand you're

3    giving up those rights?

4         THE DEFENDANT:  Yes, your Honor.

5         THE COURT:  So I'm now going to ask the government to

6    state the evidence.  There are so many counts, I don't know

7    whether we should just -- is there a separate statement of fact

8    applying to all of them, or is it basically the same statement

9    of facts?

09:59 10         MR. DEITCH:  It covers each category of offense

11    individually.

12         THE COURT:  All right, so I'm not as familiar with it,

13    so if there's a point to stop and then take a plea on that

14    count, let me know, all right?

15         MR. DEITCH:  All right.  Thank you, your Honor.  At

16    trial, the government would demonstrate that starting in late

17    2018, the defendant took the first steps --

18         THE COURT:  Okay, now, here's my concern:  I want the

19    people to hear online.  I don't know if you're far enough.  I

09:59 20    don't care if you sit down.  Just you need to speak into the

21    mic because otherwise there could be some --

22         MR. DEITCH:  Can you hear me now?

23         THE COURT:  I can hear.

24         THE CLERK:  I can check and make sure everybody can

25    hear.

1          THE COURT:  They can?  All right, go ahead.  I'm

2     sorry.

3          MR. DEITCH:  At trial, the government would

4     demonstrate that starting in late 2018, the defendant took the

5     first steps in a series of schemes in which he attempted, at

6     times unsuccessfully and at times with great success, to steal

7     explicit photos of young women and trick young women into

8     sending photos to him under false pretenses.  First, the

9     evidence would show that when he was a track coach at

10:00 10     Northeastern University, the defendant requested the cellphones

11     of female student athletes under the pretense of filming them

12     at practice and at meets.  Instead of or in addition to filming

13     them, the evidence would show that he also went through their

14     cellphones into the photos they'd saved, located photos he was

15     interested in, and covertly sent them to himself via the Direct

16     Message feature in Instagram.  To conceal his conduct, he

17     deleted the sent items from the victims' Instagram accounts.

18          Approximately a year later when he was no longer at

19     Northeastern, the evidence would show the defendant began

10:00 20     registering dummy or anonymized Instagram accounts, and that

21     using those accounts, he contacted prospective victims,

22     including some of the same Northeastern track and field student

23     athletes from whom he had stolen photos, and claimed that he

24     was a Good Samaritan who had found those same explicit photos

25     on the Internet.

1          THE COURT:  But was he using his own name or someone

2     else?

3          MR. DEITCH:  He was using anonymized accounts, not in

4     his own name, your Honor.  Using those accounts, he then sent

5     the victims photos of themselves, including some of the photos

6     he had stolen from the Northeastern students' phones.  He

7     attempted to extort additional photos of the victims by telling

8     them that he could help them remove the photos from the

9     Internet by conducting a so-called "reverse image search," and

10:01 10   that the best way to do that would be for the young women to

11    send him any additional explicit photos they may have.  Victims

12    under that scheme did not send him additional explicit photos.

13          Very specifically, the evidence would show that the

14    defendant sent the electronic messages listed in Counts 1

15    through 12 of the indictment; specifically the messages listed

16    on February 13, 2020, June 12, 2020, June 30, 2020, July 26,

17    2020, and July 27, 2020.  These messages were sent in

18    furtherance of the defendant's scheme to defraud victims for

19    the purpose of obtaining money and property by means of

10:02 20   materially false and fraudulent pretenses, representations, and

21    promises, and the messages listed in each of Counts 1 through

22    12 were transmitted by means of wire communications in

23    interstate commerce for the purpose of executing the scheme to

24    defraud.  The defendant's conduct is consistent with that as

25    described in Paragraphs 5 through 21 of the indictment.

1          Your Honor, that's the end of the factual basis for

2     Counts 1 through 12.

3          THE COURT:  I'm sorry, Ms. Peachy.  I didn't ask you

4     to do this, but do you have the indictment right with you?

5          MS. PEACHY:  Yes, I do.

6          THE COURT:  I thought I saw it.

7          Did you disagree with anything the government said

8     about the wire fraud counts in Counts 1 through 12?

9          THE DEFENDANT:  No, your Honor.

10:02  10          THE COURT:  Did you send the messages -- and they're

11     right in front of you -- on February 13, June 12, June 30,

12     July 26, and July 27, 2020?  Did you send those messages?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  All right, so do you plead guilty

15     knowingly, freely, and voluntarily, from in or about February,

16     2020, through in or about April, 2021, in the District of

17     Massachusetts and elsewhere, that you, Steven Waithe, having

18     devised and intending to devise a scheme and artifice to

19     defraud, and for obtaining money and property by means of

10:03  20     materially false and fraudulent pretenses, representations, and

21     promises, did transmit and cause to be transmitted by means of

22     wire communications, in interstate and foreign commerce,

23     writings, signs, signals, pictures, and sounds for the purpose

24     of executing the scheme to defraud, as set forth in Counts 1

25     through 12?  And I won't read each one of the messages.  Do you

1    plead guilty knowingly, freely, and voluntarily?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  All right, so now we're going to move on

4    to cyberstalking.

5          MR. DEITCH:  Yes, your Honor, with respect to

6    cyberstalking the evidence at trial would show that the

7    defendant utilized fake Instagram accounts and anonymized phone

8    numbers to engage in a pattern of harassment and intimidation

9    to cyberstalk at least one victim from in or about June of 2020

10:04 10   through in or about October of 2020.  In the course of that

11   conduct, he sent messages with the intent to harass and

12   intimidate both the victim and/or her significant other.

13   Messages to the victim included explicit photos that the

14   defendant had stolen from the victim's phone when she was on

15   the track and field team at Northeastern.

16          The messages were sent using interactive computer

17   systems, electronic communication systems, and electronic

18   systems of interstate commerce.  This conduct caused, attempted

19   to cause, and/or would be reasonably expected to cause

10:04 20   substantial emotional distress to the victim, who's identified

21   in the indictment as Victim 6.

22          THE COURT:  Like, what did he say?  Do you know?

23          MR. DEITCH:  I'll identify the paragraph in the

24   indictment, your Honor.

25          THE COURT:  It has to be enough to support intent to

1    harass and intimidate, right?

2         MR. DEITCH:  Indeed, and I'll note for the record,

3    your Honor, that the behavior in furtherance of the

4    cyberstalking is enumerated in Paragraphs 22 through 29 in the

5    indictment.  They included sending photos and saying, "Do these

6    look familiar?  Please let me ASAP."  They included additional

7    photos being sent to the victim and/or the victim's boyfriend.

8    "Is this you?"  And in particular in Paragraph 27 of the

9    indictment, the defendant stated, "I want to make you aware

10:05  10   that someone hacked your girlfriend's Snapchat account and will

11   leak it soon.  I need your help to assure this doesn't happen."

12        The government submits the evidence would show that

13   the conduct was a pattern of harassing behavior as to a

14   combination of both Victim 6 and Victim 6's significant other.

15        THE COURT:  Do you disagree with anything the

16   government just stated?

17        THE DEFENDANT:  No, your Honor.

18        THE COURT:  So do you plead guilty to cyberstalking --

19   that is, from in or about June, 2020 -- and I guess this

10:06  20   involves primarily Victim 6 and her boyfriend.  Or how's it

21   charged?

22        MR. DEITCH:  The victim of the --

23        THE COURT:  Actually it's charged as Victim 6, so that

24   must just be the woman.

25        MR. DEITCH:  It is, your Honor.

1          THE COURT:  Okay.  That from on or about June, 2020,

2    to on or about October, 2020, in the District of Massachusetts

3    and elsewhere, that you did, with intent to harass and

4    intimidate another person, use interactive computer services,

5    electronic communications services, and electronic

6    communication systems of interstate commerce -- specifically

7    text messages, social media direct messages, emails and online

8    postings -- to engage in a course of conduct that caused,

9    attempted to cause, and would be reasonably expected to cause

10:07 10  substantial emotional distress to Victim 6, all in violation of

11   18 U.S. Code, Section 2261(a)(2)(B)?  Do you plead guilty

12   knowingly, freely, and voluntarily?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  All right, thank you.  And we now move on

15   to Count 14.

16          MR. DEITCH:  I'll group 14 and 15 together, your

17   Honor, if that's okay.  That's the conspiracy to commit

18   computer fraud and the substantive computer fraud.

19          THE COURT:  Sure.

10:07 20         MR. DEITCH:  And to those crimes, your Honor, the

21   evidence at trial would demonstrate that in or about May of

22   2020, the defendant began a scheme to conspire with others on

23   the Internet to hack into the Snapchat accounts of young women,

24   many of whom he knew in his real life.  For example, in or

25   about May of 2020, the defendant posted on a website designed

1     for the sharing of so-called "leaked photos" a request for

2     information on, quote, "how to hack Snapchat."  By October of

3     2020, the defendant had communicated with the individual

4     identified in the indictment as CC-1 about hacking into

5     specific Snapchat accounts.  He sent CC-1 information about

6     victims, including the usernames and phone numbers of

7     approximately fifteen women.  At the defendant's direction,

8     CC-1 successfully obtained access to a victim's Snapchat

9     account -- again, Victim 6 -- and sent the defendant a link to

10:08 10    a cloud storage folder containing photos that had been stolen

11    from Victim 6's Snapchat account.  When notified of the

12    successful hack, the defendant messaged CC-1, quote, "Hell,

13    yeah, man.  Keep it coming.  I'll pay you gladly.  How do you

14    accept money?"

15          In furtherance of the conspiracy, the evidence would

16    show that on February 3, 2020, the defendant sent a payment to

17    a Google Pay account associated with CC-1.  In the end, the

18    evidence would show that the defendant conspired with others to

19    hack or attempt to hack the Snapchat accounts of dozens of

10:08 20    additional victims.

21          In short, your Honor, the evidence at trial would

22    demonstrate that the defendant, through his fraudulent schemes,

23    successfully obtained hundreds of photos from victims, all of

24    whom were young women and many of whom the defendant knew

25    personally.  The evidence at trial would show that there were

1    at least fifty young women across the country who have been

2    victimized by this conduct.

3             THE COURT:  Five-zero?

4             MR. DEITCH:  Five-zero, over five-zero.  Thank you,

5    your Honor.

6             THE COURT:  Thank you.  Do you disagree with anything

7    the government said?

8             THE DEFENDANT:  No, your Honor.

9             THE COURT:  So with respect to conspiracy to commit

10:09 10   computer fraud, do you plead guilty that on or about October 3,

11   2020, in the District of Massachusetts and elsewhere, that you

12   conspired with CC-1 and others, known and unknown to the grand

13   jury, to commit offenses against the United States -- to wit,

14   computer intrusion -- in violation of 18 U.S. Code,

15   Section 1030(a)(4); that is, to knowingly access a protected

16   computer without authorization with intent to defraud, and by

17   means of such conduct, to further the intended fraud and obtain

18   a thing of value, all in violation of 18 U.S. Code,

19   Section 371?  Do you plead guilty knowingly, freely, and

10:10 20   voluntarily?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  And, finally, with respect to Count 15,

23   computer fraud/aiding and abetting, do you plead guilty to on

24   or about October 3, 2020, in the District of Massachusetts and

25   elsewhere, that you together with CC-1, and others known and

1    unknown to the grand jury, did knowingly access a protected

2    computer without authorization with intent to defraud --

3              And that's Victim 6, right?

4              MR. DEITCH:  Yes.

5              THE COURT:  -- with intent to defraud, and by means of

6    such conduct, did further the intended fraud and obtain a thing

7    of value -- to wit, nude and semi-nude images of Victim 6 --

8    all in violation of 18 U.S. Code, Section 1030(a)(4) and (2)?

9    Do you plead guilty knowingly, freely, and voluntarily?

10:10 10         THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  And there's a forfeiture allegation.  What

12   are we talking about?

13             MR. DEITCH:  A variety, your Honor, of electronic

14   devices seized from the defendant.

15             THE COURT:  Is there any dispute about that?

16             MS. PEACHY:  No.

17             THE COURT:  Do you understand that a lot of computer

18   equipment will be forfeited?

19             THE DEFENDANT:  Yes, your Honor.

10:11 20         THE COURT:  Thank you.  So I find your plea is knowing

21   and voluntary, supported by an independent basis in fact

22   concerning each of the essential elements, and I accept it.

23   You can step down.  Thank you.

24             (Defendant returns to counsel table.)

25             THE COURT:  Do we have a date for sentencing?

 1        THE CLERK:  Yes, Judge.  We have March 6 at 2:30.

 2        THE COURT:  Okay.  Now, have you been in touch with

 3   the victims, or is your victim -- are they going to come?

 4        MR. DEITCH:  Your Honor, yes.  I would expect to block

 5   off a bit of time for sentencing.  The government has

 6   indicated, and will formally put the defendant on notice, the

 7   government will be seeking an upward departure from the

 8   Guidelines.  We expect multiple victims to exercise their right

 9   to speak at sentencing.

10:11 10        THE COURT:  Where do they all live?  Here's my issue,

11   which is, sentencings are supposed to be fully public events.

12   So while I certainly allowed people to attend the plea colloquy

13   by Zoom to accommodate them, and, of course, Mr. Waithe's

14   father, I think it makes -- I'm torn about whether I should do

15   that at sentencing.

16        MR. DEITCH:  Understood, your Honor, and I can give it

17   some additional thought.  I think certainly for victims who

18   wish to speak, I understand the Court's hesitancy for them not

19   to be present physically.  For those who opt not to speak --

10:12 20        THE COURT:  Oh, if they don't want to speak, that's

21   fine, but if they speak, it probably should be part of a public

22   proceeding.

23        MR. DEITCH:  Understood.

24        THE COURT:  And, of course, if they don't want to

25   speak at all, they can submit a written statement, which I do

 1    read.

 2              MR. DEITCH:  Of course.

 3              THE COURT:  And you often, or not you, but the

 4    government often refers to it in its statement.  So I think the

 5    same -- I don't know -- if I remember correctly, Mr. Waithe is

 6    from, as he said, Baltimore area -- whether his family would

 7    want to come up.

 8              MS. PEACHY:  They are.  They're going to be here in

 9    person for the sentencing hearing, your Honor.

10:12 10          THE COURT:  Okay, the public has great interest in

11    that, perhaps the press, but I want to have a public

12    proceeding.  And so if any victims don't want to attend and

13    don't want to present orally, I will try and do Zoom for them,

14    but if they want to present, they should come here.

15              MR. DEITCH:  Understood.

16              THE COURT:  I think that's the best way.

17              Now, the next thing, there's a debate over the

18    Guidelines, put aside the upward departure issue.  What's the

19    debate?  Is there something that is a factual issue that I need

10:13 20    an evidentiary hearing on?

21              MR. DEITCH:  I think there are two hang-ups, and from

22    the government's perspective, neither are evidentiary.  One is

23    the two-level increase for use of a means of identification.

24    The government's position, at least at present, is, the

25    defendant's use of usernames, phone numbers and other

1    identifying information of victims in order to further his

2    fraud and conspiracy constitute sufficient means of

3    identification for that enhancement.

4         The other is a two-level increase for his aggravating

5    role in the conspiracy, as he was directing one and actually

6    more than one co-conspirators, in furtherance of the conspiracy,

7    to hack into the Snapchat accounts.  So I think those are more

8    legal issues than factual.

9         THE COURT:  Well, not always.  I just have to warn

10   you.  I think the government likes that, but I often can't tell

11   what someone's role in the conspiracy is based just on this,

12   unless you have something that makes that clear, especially

13   since he apparently offered money.  Did it ever get paid?  I

14   mean, you'd have to do -- let me just say this:  If you plan on

15   having an evidentiary hearing and you care enough, you need to

16   let us know because I need to block time.

17        MR. DEITCH:  So if Ms. Peachy is open to it, we'll

18   discuss the disagreement, and certainly, if necessary, the

19   government will ask for an evidentiary hearing because

20   especially with respect to his role, his aggravating role,

21   that's something the government would demonstrate.

22        THE COURT:  This is not that case, but I often find it

23   very difficult in a drug conspiracy to actually find out where

24   everybody is, and sometimes it's crystal clear, but a lot of

25   times it really isn't.  So I don't know this case, and you're

just going to have to block time if you plan on introducing a

witness.

        MR. DEITCH:  Understood.

        THE COURT:  And so I'm going to block an hour.

Ms. Peachy, do you know of any witnesses you might be calling

or any such thing, or is this mostly going to be briefing?

        MS. PEACHY:  I think it's mostly going to be briefing,

your Honor, and I do anticipate that there probably won't be

any factual disputes, but it's just whether legally these

Guideline enhancements apply.  And I would just point out as

well that part of the dispute is that if Mr. Waithe is found to

be an organizer or a leader in a conspiracy, then he wouldn't

get the benefit of the downward departure for zero-point

offenders.

        THE COURT:  Does that apply simply to a supervisor?

        MS. PEACHY:  Correct.

        THE COURT:  All right, so anyone who gets that --

        MS. PEACHY:  Anyone who gets that role enhancement

cannot get the zero-point offender departure.  So that's the

universe of --

        THE COURT:  I see, that's what creates the incentive

for you.

        All right, so, Maryellen, I think we should block a

couple of hours.  The more you're talking, the more I'm

thinking that there's a big issue here.

1          MR. DEITCH:  Your Honor, the government can be in

2    touch with Ms. Molloy about the number of victims who expect to

3    exercise their right to speak because obviously that will play

4    a role.  There's I think fifty-two identified victims.  I don't

5    know how many of them will want to be here and want to address

6    the Court, but I can let the Court know well in advance.

7          THE COURT:  Oh, you think even half of that might want

8    to show?

9          MR. DEITCH:  I don't know.  You know, some victims

10:16 10   have been very actively involved in the case.  Others have sort

11   of taken a step back.  I think the conduct has affected the

12   victims in very different ways.

13         THE COURT:  Is there any restitution involved?

14         MR. DEITCH:  So we're working on that, your Honor.  I

15   think it's not going to be an extraordinary amount, but I do

16   know some victims have had and occurred costs relating to

17   therapy as a result of the defendant's conduct, and that at a

18   minimum is something that we want to get information about.

19         THE COURT:  Let me tell you what I hate but I can't

10:17 20   always avoid:  We go through the whole sentencing.  We have the

21   sentencing, we do it.  He's -- where is he, at Wyatt or

22   Plymouth or someplace like that?  And then I have to wait

23   90 days to have a restitution battle.  So I suggest that you

24   try and organize an agreed-upon amount, if any, for that day,

25   and if there's a dispute for that day, so that he can go

| | |
|---|---|
| 1 | wherever he's going to go and not get stuck here, no |
| 2 | programming, no nothing. |
| 3 | MR. DEITCH:  Understood, your Honor. |
| 4 | THE COURT:  And just how long has he been |
| 5 | incarcerated?  In other words, if I go with your calculation -- |
| 6 | MS. PEACHY:  Fourteen months, almost fourteen months |
| 7 | at this point. |
| 8 | THE COURT:  And then by then, it will be 17 months, so |
| 9 | under no theory am I backing up against -- |
| 10:18 10 | MS. PEACHY:  Correct. |
| 11 | THE COURT:  Is that right?  Okay, good.  That's |
| 12 | wonderful.  Okay, well, I will see you in March and look |
| 13 | forward to hearing from you, and I'm going to block two hours, |
| 14 | and if you don't need it, would you let us know so we can -- if |
| 15 | you come to some resolution on the matter, it would be very |
| 16 | useful. |
| 17 | MR. DEITCH:  Will do, your Honor.  Thank you. |
| 18 | THE COURT:  Where is CC-1, I mean, generally speaking, |
| 19 | in Boston or somewhere else? |
| 10:18 20 | MR. DEITCH:  Definitely in Boston.  I don't know where |
| 21 | he is right now. |
| 22 | THE COURT:  Okay, thank you.  Bye-bye.  Thank you. |
| 23 | MS. PEACHY:  Thank you, your Honor. |
| 24 | THE CLERK:  All rise. |
| 25 | (Adjourned, 10:18 a.m.) |

1                     C E R T I F I C A T E

2

3

UNITED STATES DISTRICT COURT )
4  DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )
5

6

7           I, Lee A. Marzilli, Official Federal Court Reporter,

8  do hereby certify that the foregoing transcript, Pages 1

9  through 26 inclusive, was recorded by me stenographically at

10 the time and place aforesaid in Criminal No. 23-10342-PBS,

11 United States of America v. Steve Waithe, and thereafter by me

12 reduced to typewriting and is a true and accurate record of the

13 proceedings.

14           Dated this 7th day of December, 2023.

15

16

17

18

19

20           /s/ Lee A. Marzilli
   _____
21 LEE A. MARZILLI, CRR
   OFFICIAL COURT REPORTER

22

23

24

25